UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
GREGORY COOPER, :
:
　　　　　　　　　　Petitioner, :
: 08 Cr. 356 (KMK)
　　- v. - :
:
UNITED STATES OF AMERICA, :
:
　　　　　　　　　　Respondent. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO PETITION FOR WRIT OF ERROR *CORAM NOBIS*

　　　　　　　　　　　　　　　　　　　　　　GEOFFREY S. BERMAN
　　　　　　　　　　　　　　　　　　　　　　United States Attorney for the
　　　　　　　　　　　　　　　　　　　　　　Southern District of New York
　　　　　　　　　　　　　　　　　　　　　　Attorney for the United States of America

Kathryn Martin
Assistant United States Attorney
　*Of Counsel*

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the Petition for a writ of error *coram nobis* filed by Petitioner Gregory Cooper. Cooper claims that his conviction and sentence on fraud charges should be vacated because he allegedly received ineffective assistance of counsel. Specifically, Cooper contends that trial counsel failed to properly advise him in connection with a potential plea offer from the Government, supposedly promising Cooper that he would not "get more time if [he] los[t] at trial." *Coram Nobis* Petition ("Petition") at 2. This Court should swiftly deny Cooper's petition.

Cooper is currently serving a term of imprisonment; therefore, he is not eligible for *coram nobis* relief. Moreover, even if a *coram nobis* petition were the proper vehicle for his claim, Cooper still would not be entitled to relief because he cannot establish sound reasons for his failure to seek appropriate earlier relief.

## BACKGROUND

### I. The Charges and Trial

Superseding Indictment S5 08 Cr. 365 (KMK) (the "Indictment") was filed on August 31, 2009, in 20 counts. Counts One and Two charged Cooper with conspiracy to commit mail fraud, in violation of Title 18, United States Code, Section 1349, and Counts Three through Twenty charged Cooper with mail fraud, in violation of Title 18, United States Code, Section 1341.

The charges related to Cooper's involvement in two distinct, but related fraudulent schemes from in or about late 2003 through in or about April 2008. In the first scheme, the Mortgage Broker Scheme, Cooper and his co-conspirators defrauded mortgage brokers around the country by convincing them to buy bogus lists of potential customers. In the second scheme,

the Homeowner Scheme, Cooper and his co-conspirators defrauded homeowners in Queens and the Bronx through a predatory mortgage scheme.

On October 13, 2009, the Government proceeded to trial on eleven counts; specifically, the two conspiracy counts and nine of the substantive mail fraud counts. The Government's proof at trial consisted of, among other things, testimony from eleven victims (five victims of the Mortgage Broker Scheme and six victims of the Homeowner Scheme); testimony from six former employees of Cooper's fraudulent businesses, including two cooperating witnesses; several recorded conversations between victims and Cooper's employees; and various exhibits, including telemarketing scripts and other documents recovered from the search of Cooper's office and residence, mortgage documents, and e-mails Cooper's personal e-mail account.

Cooper did not present a defense case. The jury began deliberating on October 28, 2009 and returned its verdict the same day, finding Cooper guilty on all eleven counts.

**II.     Sentencing**

Following the jury's verdict, the Probation Office prepared the Presentence Report ("PSR"). In the PSR, the Probation Office determined, among other things, that: (i) the offense involved a loss of between $1,000,000 and $2,500,000, warranting a 16-level increase pursuant to U.S.S.G. § 2B1.1(b)(1)(I); and (ii) because the offense involved more than 250 victims, a six-level enhancement was warranted pursuant to U.S.S.G. § 2B1.1(b)(2)(C). (PSR ¶¶ 33-40). The Probation Office ultimately concluded that Cooper's total offense level was 35 and that his Criminal History Category was IV, yielding an applicable Sentencing Guidelines range of 235 to 293 Months. (PSR ¶¶ 46;59; 86).

In his sentencing submission, Cooper argued, among other things, that (i) the only

2

victims for Guidelines purposes were the 11 victims who actually testified at trial; and (ii) the only loss for Guidelines purposes was the approximately $150,000 in loss suffered by the 11 victims who actually testified at trial. *See* Docket Entry 107 at 4-13. Cooper also disputed the sentencing enhancement for leadership and certain criminal history points.

In its submission, the Government conceded that the criminal history points in dispute should not be applied, but asserted that the remainder of the enhancements, including the enhancements relating to the number of victims and loss amount, should be applied. In particular, with respect to the number of victims and total loss suffered by those victims, the Government argued that the trial record established that Cooper had victimized many more than just the 11 victims who testified at trial, and that records introduced at trial and supplemented by post-trial submissions to the Probation Office, demonstrated that the total number of victims was more than 250 and the total amount of loss suffered by those victims was more than $1 million. *See* Docket Entry 109 at 3-23.

At sentencing, the Court rejected Cooper's position regarding the number of victims and loss amount, explaining that it had "no difficulty finding by a preponderance of the evidence, indeed by a clear and convincing evidence standard, that the government has established that there were at least 250 victims of the fraud and . . . that the loss amount was between one million and 2.5 million dollars. Applying these enhancements, the Court found that the total offense level was 35 and that Cooper's Criminal History Category was III, resulting in a Guidelines range of 210 to 262 months. Judge Karas sentenced Cooper to a term of 210 months' imprisonment, to be followed by three years' supervised release. Docket Entry 121.

### III. Appeal

Cooper appealed his conviction and sentence. On appeal, Cooper argued, among other

3

things, that the 210-month sentence imposed by the Court was procedurally unreasonable because the district court's determination of loss amount and the number of victims was clearly erroneous.

The Court of Appeals rejected Cooper's arguments and affirmed his conviction and sentence, by summary order issued on November 3, 2011. *See United States v. Burke*, 445 Fed. Appx. 395, 2011 WL 5222690 (2d Cir. Nov. 3, 2011). The Court of Appeals held that the "district court's determination that a preponderance of the evidence supported a finding that there were at least 250 victims and that he loss amount was between one million and 2.5 million dollars was not clearly erroneous," and thus Cooper's sentence was procedurally reasonable.

Cooper filed a petition for writ of *certiorari*. On June 4, 2012, the Supreme Court denied Cooper's petition. *Cooper v. United States*, 123 S. Ct. 2731 (2012).

**IV. Cooper's Section 2255 Motion**

On May 31, 2013, Cooper filed a *pro se* motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence. In his Section 2255 motion, Cooper argued, among other things, that his trial counsel rendered ineffective assistance of counsel by (i) failing to discover an error in the Government's Guidelines calculation from the plea negotiation stage through sentencing; (2) providing "bad advice" to Cooper regarding Cooper's sentencing exposure; and (3) failing to challenge the erroneous loss amount in the PSR. Cooper's claims were premised on an alleged error in the calculation of the loss amount associated with the homeowner scheme, namely the supposed erroneous inclusion of finance charges. *See* Docket Entry 136 at 4-8.

The Court rejected Cooper's claims, finding, among other things, that the finance fees were appropriately characterized as losses, and thus trial counsel's decision not to object to the loss amount was objectively reasonable. *See Cooper v. United States*, 08 Cr. 356, 13 Cv. 3769,

4

Dec. 22, 2015 Opinion and Order, at 19-22. The Court denied Cooper's motion in all other respects (including at least two other ineffective assistance claims) and declined to issue a certificate of appealability. *Id.* at

On September 22, 2016, the Court of Appeals denied Cooper's motion for a certificate of appealability, concluding that Cooper failed to make a substantial showing of the denial of a constitutional right. *See* Docket Entry 150; 28 U.S.C. § 2253 (c).

V.     **Cooper's Subsequent Filings and the Instant Petition**

On March 28, 2017, Cooper filed a second motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence. In this second motion, Cooper argued that "the significant effect of the loss enhancement calls for a non-guidelines sentence per the recent Court of Appeals decision of the Second Circuit in *United States v. Algahaim*." Docket Entry 153 at 1. Because Cooper's motion was a second or successive habeas motion, the Court transferred the motion to the Court of Appeals, so that Cooper could apply for authorization to make such an application, as required by 28 U.S.C. § 2244(b)(3)(A). *See* Docket Entry 153. On April 30, 2018, the Court of Appeals denied Cooper's motion to file a successive 28 U.S.C. § 2255 motion, finding that he failed to make a *prima facie* showing that such relief was necessary, as he did not rely on newly discovered evidence or a new rule of constitutional law. *See* Docket Entry 158.

On May 1, 2018, Cooper asked the Court to appoint counsel to assist him with a motion to reduce his sentence based on the Supreme Court's decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013). *See* Docket Entry 159. The Government opposed Cooper's request, noting that *Alleyne* has no bearing on the constitutionality of Cooper's sentence. *See* Docket Entry 164.

5

On May 9, 2018, Cooper filed the instant petition for a writ of error *coram nobis*, arguing that trial counsel rendered ineffective assistance by failing to advise him properly during plea negotiations. In particular, Cooper claims that trial counsel erroneously advised him that if he proceeded to trial and was convicted, the Court could only sentence him based on the losses of the victims who testified at trial. Petition at 4.

## ARGUMENT

### I.   Applicable Law

The writ of error *coram nobis* "is essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus." *Fleming v. United States*, 146 F.3d 88, 89-90 (2d Cir. 1998) (per curiam). *Coram nobis* is not, however, a mere "substitute for appeal" or habeas corpus, *see Foont v. United States*, 93 F.3d 76, 78 (2d Cir. 1996), and such relief accordingly "should not be granted in the ordinary case," *United States v. Denedo*, 556 U.S. 904, 917 (2009) (quotation marks omitted). To the contrary, *coram nobis* is an "extraordinary remedy," *United States v. Morgan*, 346 U.S. 502, 511 (1954), that "is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid," *Foont*, 93 F.3d at 78 (quotation marks and alteration omitted). *See also Carlisle v. United States*, 517 U.S. 416, 429 (1996) (observing that "it is difficult to conceive of a situation in a federal criminal case today where [a writ of *coram nobis*] would be necessary or appropriate" (quotation marks omitted; alteration in original)).

In reviewing a *coram nobis* petition, this Court must "presume[] the proceedings were correct[,] and the burden rests on the accused to show otherwise." *Morgan*, 346 U.S. at 511; *accord Fleming*, 146 F.3d at 90; *Foont*, 93 F.3d at 78-79. To obtain *coram nobis* relief, the

6

petitioner "must demonstrate that '(1) there are circumstances compelling such action to achieve justice, (2) sound reasons exist for failure to seek appropriate earlier relief, and (3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ.'" *Fleming*, 146 F.3d at 90 (quoting *Foont*, 93 F.3d at 79).

Petitioner has failed to satisfy his burden for at least two independent reasons. First, Cooper is still serving his term of imprisonment, and thus he is not eligible for *coram nobis* relief. Second, Petitioner has failed to demonstrate that sound reasons exist for his failure to seek appropriate earlier relief in the form of a motion to vacate his sentence under 28 U.S.C. § 2255. Accordingly, this Court should deny the Petition for a writ of error *coram nobis*.

## II. Discussion

### A. Cooper Is Not Eligible for *Coram Nobis* Relief Because He is Still in Custody

Because a motion to vacate a sentence is available to a person "in custody under sentence of a [federal] court" seeking to challenge his conviction, 28 U.S.C. § 2255(a), the writ of error *coram nobis* is only available to petitioners "who are *no longer in custody* pursuant to a criminal conviction," *Fleming*, 146 F.3d at 89-90 (emphasis added). Here, because Cooper is still serving his term of imprisonment, he is not eligible for *coram nobis* relief. *See United States v. Henry*, 205 F.3d 1325, at *1 (2d Cir. 2000) (concluding that petitioner was barred from seeking *coram nobis* relief because he was still serving his 151-month sentence for the challenged conviction); *Ramirez v. United States*, 2012 WL 753763, at *2 (S.D.N.Y. March 7, 2012) (holding that petitioner's motion was procedurally barred because he was still in custody). The proper vehicle for challenging his conviction is a motion pursuant to Section 2255, and the Petition for a writ of error *coram nobis* should be dismissed on this procedural ground alone.

7

### B. Petitioner Is Not Entitled to a Writ of Error *Coram Nobis* Because He Offers No Sound Reason for Failing to Seek Timely Earlier Relief

Even if a writ of error *coram nobis* were the proper vehicle for Cooper's claim (and it is not), he would not be entitled to relief here. To obtain a writ of error *coram nobis*, a petitioner must demonstrate that "sound reasons" exist for his failure to seek appropriate earlier relief. *Foont*, 93 F.3d at 79. Entertaining a *coram nobis* petition notwithstanding the absence of sound reasons for delay "would be an unwarranted infringement upon the government's interest in the finality of convictions." *Id.* at 80. "The critical inquiry . . . is whether the petitioner is able to show *justifiable* reasons for the delay." *Id.* (emphasis added).

If a *coram nobis* petitioner could have challenged his conviction in an earlier proceeding but failed to do so, he must show that "'sound reasons' exist for his procedural default." *Calvert v. United States*, 351 F. App'x 475, 476 (2d Cir. 2009) (quoting *Fleming*, 146 F.3d at 90). Thus, if a petitioner "is unable to explain why he could not have sought earlier relief, either through direct appeal or through a petition for habeas corpus pursuant to 28 U.S.C. § 2255," *coram nobis* relief will not lie. *Calvert v. United States*, 06 Civ. 1722 (CBA), 2007 U.S. Dist. LEXIS 3327, at *8 (E.D.N.Y. Jan. 17, 2007), *aff'd*, 351 F. App'x 475 (2d Cir. 2009).

Here, Cooper brought a timely Section 2255 motion, in which he raised a number of claims relating to trial counsel's alleged ineffective assistance during the trial and plea negotiations, including trial counsel's alleged "bad advice" regarding the inclusion of finance charges in the loss calculation. Although Cooper did not specifically raise the argument he now presses in his *coram nobis* petition – that trial counsel provided erroneous advice in plea discussions regarding which victims' losses could properly be included in the loss calculation – he certainly was aware of the issue. Indeed, Cooper raised the applicability of sentencing enhancements for the number of victims and total loss amount on appeal. Given these

circumstances, Cooper's self-serving assertion that he did not "know that an attorney could be found ineffective if he promised that you couldn't get more time if you lose at trial" until May 2018 – just days after the Second Circuit denied his motion to file a successive habeas petition – falls far short of providing a "sound reason" for his failing to include the specific claim in his first Section 2255 motion.

The instant *coram nobis* petition is essentially a successive Section 2255 motion, which is governed by AEDPA's requirement that petitioner obtain authorization from the Second Circuit prior to filing a second or successive Section 2255 motion. *See* 28 U.S.C. § 2255(h). Cooper previously moved in the Second Circuit for such authorization. The Second Circuit denied Cooper's request to file a successive habeas motion, concluding that he failed to satisfy the fundamental requirement that the motion be based on either newly discovered evidence or a new rule of constitutional law. *See* 28 U.S.C. § 2255(h); Docket Entry 158. The ineffective assistance claim Cooper raises in the instant *coram nobis* petition would likewise fail to satisfy the requirements of Section 2255(h) because it is not based on a newly discovered evidence or a new rule of constitutional law.

Cooper cannot use a *coram nobis* petition as an end-run around Section 2255's requirements regarding authorization to file second, successive habeas petitions. *See generally Godoski* v. *United States*, 304 F.3d 761, 763 (7th Cir. 2002) (holding that "a criminal defendant who missed a deadline" for a Section 2255 motion may not "tr[y] to use *coram nobis* to obtain relief belatedly"); Bennett v. United States, 1997 WL 285987, at *2 (N.D. Ill. May 22, 1997) (denying petitioner's *coram nobis* petition, concluding it was really a successive Section 2255 motion and noting that "[a]llowing such a gambit to succeed would undermine the clear intention of Congress to require successive-filers of § 2255 motions to first demonstrate that their motions

9

are worthy of serious consideration and the consequent expenditure of the courts' time and resources.").

Because Petitioner has not offered any sound reasons for failing to include his ineffective assistance claim in his initial Section 2255 motion, and the instant petition is essentially a second, successive Section 2255 motion for which he did not obtain the required authorization, the Court should dismiss the Petition.[1]

## CONCLUSION

For the foregoing reasons, this Court should deny the Petition with prejudice.

Dated: White Plains, New York
July 27, 2018

          Respectfully submitted,

          GEOFFREY S. BERMAN
          United States Attorney for the
          Southern District of New York,

By: *[signature]*
   KATHRYN M. MARTIN
   Assistant United States Attorney
   (914) 993-1963

---

[1] The Government has not addressed the merits of Cooper's ineffective assistance claim in this opposition, as it would likely require a statement from trial counsel, Joseph Vita. In particular, as part of his petition, Cooper submitted an affidavit claiming that Mr. Vita told him, in substance and in part, that Cooper would not get more time after trial "than what the [Government] was giving in the plea and we should go to trial." Petition at 4. Cooper further claims that he "never would have gone to trial if [he] had known [he] could get a sentencing disparity of almost 6 more years." *Id.* The Government believes it would be necessary to obtain a statement from Mr. Vita to resolve the claim. If the Court is inclined to proceed to the merits, the Government asks for an opportunity to obtain an affidavit from Mr. Vita (after obtaining a waiver of attorney client privilege from Cooper) to address the merits of Cooper's claim.