**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

April 21, 2020

The Honorable Kenneth M. Karas
United States Courthouse
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

      Re:    **United States v. Gregory Cooper,**
             **08 Cr. 356 (KMK)**

Dear Judge Karas:

    The Government writes in response to counsel's supplemental letter in support of Gregory Cooper's *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Notwithstanding the new arguments raised by counsel, the Court should deny Cooper's request for compassionate release.

## BACKGROUND

    In his *pro se* motion, Cooper moves for compassionate release on two grounds. First, he requests compassionate release because the 210-month term of imprisonment to which he was sentenced was based on a sentencing range, in particular an enhancement for the number of victims, that has subsequently been lowered by the Sentencing Commission. Second, Cooper argues that his underlying health conditions, in particular his hypertension and seizure disorder, place him at higher risk for suffering severe illness as a result of COVID-19. Counsel's supplemental letter, dated April 16, 2020, addresses only the second ground raised by Cooper, *i.e.*, his health issues in combination with concerns about COVID-19. *See* April 16, 2016 Letter to Court from Clay Kaminsky, Esq., on behalf of Cooper ("Def. Ltr."). Therefore, in this letter, the Government only addresses this second ground relied on by Cooper and the new arguments raised by counsel in support of Cooper's request.

## DISCUSSION

    In urging the Court to grant Cooper's motion, counsel argues that Cooper has, in fact, exhausted his administrative remedies with respect to his claim based on COVID-19, and has also established extraordinary and compelling reasons warranting his release. Regarding the merits of Cooper's motion, counsel asserts that in addition to Cooper's hypertension and a seizure disorder, both of which were raised by Cooper and counsel in their letters to the warden of MDC requesting compassionate release, Cooper suffers from obesity and diabetes. Counsel argues that the totality of these conditions, combined with Cooper's advanced age (52), and the inherent conditions of

confinement, rise to the level of extraordinary and compelling circumstances warranting Cooper's immediate release from custody. *See* Def. Ltr at 3-7. None of the arguments raised by counsel changes the Government's position regarding exhaustion or the merits of Cooper's motion.

### A. Cooper Has Failed to Exhaust Remedies With Respect to His COVID-19 Claim

Regarding exhaustion, counsel relies on Judge McMahon's recent decision in *United States v. Resnick*, 14 Cr. 810 (CM), 2020 WL 1651508 (S.D.N.Y. Apr. 2, 2020) to argue that Cooper's initial request for compassionate release, which was filed with the Warden of MDC in November 2019, denied on February 7, 2020, and based on the change in the fraud Sentencing Guideline, *see* Ex. A to the Government's 4/10/20 opposition, satisfies the exhaustion requirement for *all* of Cooper's claim. *See* Def. Ltr. at 2-3. Counsel's reliance on *Resnick* for the broad proposition that an old petition raising other grounds for release constitutes exhaustion, is misplaced. In *Resnick*, the defendant submitted an initial request for release to the warden of his facility on February 26, 2020 by handing the request to his counselor. On the form, Resnick checked the box indicating that his request was premised on the fact that he was over 60 and had served 2/3 of his sentence. On March 28, counsel for Resnick submitted a supplemental request for release, specifically relying on Resnick's particular susceptibilities to COVID-19. BOP denied Resnick's initial request on April 2.

The Government argued that Resnick had failed to exhaust his administrative remedies because less than 30 days had elapsed since the warden received both his initial request, as well as counsel's COVID-19 specific request. Judge McMahon rejected the Government's argument, finding that the defendant had submitted his request on February 26, the date he handed it to his counselor, not the date when the warden received it. Judge McMahon further found that although the defendant did not specifically raised COVID-19 in his February 26 request, she assumed, given the timing of the requests and the coronavirus outbreak, that the BOP was aware of the rapid deterioration of conditions due to COVID-19, as well as the Attorney General's March 26, 2020 Order directing BOP to consider to prioritize the transfer of incarcerated inmates to home confinement "where appropriate" to decrease the risks to their health, when it denied Resnick's initial claim on April 2. *See* 2020 WL 1651508, at *6.

The circumstances in *Resnick* are not analogous to the circumstances here. Of particular significance, Cooper's November 2019 request for compassionate release was denied by the BOP *before* COVID-19 was declared a national emergency in the United States and before the Attorney General's memo regarding compassionate release was issued on March 26, 2020. Judge McMahon herself has recognized the timing of a prior request as critical in evaluating whether a defendant is deemed to have exhausted his remedies based on an earlier prior request for compassionate release. Indeed, in *United States v. Samet*, 01 Cr. 216 (CM), the defendant moved for compassionate release based on a number of grounds. He later added a COVID-19 claim, which was not included in his earlier filings. The Court denied Samet's motion on the merits with respect to the claims that he had previously raised with the BOP. Regarding his request based on COVID-19, however, Judge McMahon denied his motion without prejudice for failure to exhaust remedies. Judge McMahon explained:

> Samet undoubtedly exhausted his administrative remedies, but it appears that the Warden denied Samet's petition long before the COVID-19 pandemic began, which means that there is no live administrative petition at any point during the pandemic and so no opportunity for the Bureau of Prisons to consider the impact of COVID on Samet's situation. This differentiates Samet's case from that of Mark Resnick, *see United States v. Resnick*, 2020 WL 1651508 (CM), where the petition was under administrative review during the COVID pandemic and the BOP was under orders from the Attorney General to consider COVID vulnerability in assessing compassionate release petitions.

Ex. 4 (Apr. 9, 2020 Order). So too here. Notwithstanding the fact that Cooper filed an earlier request for compassionate release, for which he exhausted his administrative remedies, such request does not constitute exhaustion for his COVID-19 request. The BOP should be given a chance to evaluate Cooper's request based on his health and vulnerability to COVID-19, before this Court evaluates it and makes a decision on his motion.

### B. Cooper Has Failed to Identify Extraordinary and Compelling Circumstances Justifying Compassionate Release

As with exhaustion, the additional information raised by counsel addressing the merits of Cooper's claim should not change the conclusion that Cooper has failed to identify extraordinary and compelling circumstances justifying his compassionate release.

#### 1. Conditions at the MDC Brooklyn

In his letter, counsel attaches two affidavits addressing the extreme difficulty of containing and managing a pandemic in a custodial setting. *See* Def. Ltr. at 7-11. There is no question that the coronavirus pandemic presents a real issue for prisons. But, as discussed in detail in the Government's opposition, the BOP has made significant efforts to respond to the crisis and the unique problems it poses for incarcerated defendants. Further, although there have been COVID-19 cases at BOP facilities across the country, as of April 16, 2020, MDC Brooklyn reported only 5 inmates and 16 staff who had tested positive for the virus.[1] To put that number in perspective, as of April 21, 2020, the Brooklyn MDC has a population of 1679 inmates. *See* BOP website listing location data for MDC Brooklyn.[2] Thus, notwithstanding the very real threat the coronavirus pandemic poses for prisons, there is no question the BOP is meaningfully addressing this threat and successfully mitigating it.

---

[1] April 16, 2020 Letter from BOP to Chief JudgeRoslynn R. Mauskopf, available at https://www.nyed.uscourts.gov/pub/bop/MDC_MCC_20200416_053113.pdf. According to the BOP website, last checked on April 21, 2020, MDC Brooklyn reported that 3 inmates and 21 staff had tested positive. Available at https://www.bop.gov/coronavirus/.

[2] Available at https://www.bop.gov/locations/institutions/bro/.

### 2. Cooper's Health Issues

In his letter, defense counsel raises – for the first time – Cooper's obesity and diabetes. In particular, counsel asserts that Cooper has diabetes, noting that Cooper was first diagnosed with Type II diabetes in 2016, when he weighed about 250 pounds. Counsel further asserts that Cooper was able to manage his diabetes with dietary intervention and weight loss, but is again symptomatic and now weighs 264 pounds, with fewer opportunities for achieving weight loss at MDC. *See* Def. Ltr. at 6[3]. Relatedly, counsel asserts that Cooper, who is 6'4" tall and weighs approximately 264 pounds, is within the clinically obese range. *See id.*

Neither of these newly raised conditions, either alone or in combination with the other medical conditions previously raised by Cooper, rise to the level of extraordinary and compelling circumstances warranting immediate release in this case. While the CDC has advised that an individual suffering from diabetes is at higher risk for severe disease and death from COVID-19, it is not at all clear from Cooper's medical records whether he is now, or ever has been, suffering from full blown diabetes. The records indicate that Cooper was diagnosed with prediabetes within the last three years, although it does not appear that he has ever taken any medication for the condition. *See* Ex. 5 (excerpts from Cooper's BOP medical records). Further, results from a blood test conducted as recently as March 19, 2020, show that Cooper's hemoglobin level – an indicator of prediabetes and diabetes – was within the normal range. *See* Ex. 5 (blood test results from sample collected on 3/19/2020). In any event, even if Cooper is presently suffering from prediabetes, such a condition is distinguishable from diabetes and does not carry with it the same risks and vulnerabilities to COVID-19. *See United States v. Livingston*, 2020 WL 1905202, at *3 (E.D.N.Y. Apr. 17, 2020) (denying defendant's motion for compassionate release based on his prediabetes, noting that prediabetes is not on the CDC's list of high-risk medical conditions, finding that such condition put the defendant's risk as slightly more concerning than the average detainee's vulnerability to adverse impacts of the virus).

As for Cooper's weight, counsel asserts that he weighs approximately 264 pounds. His medical records list his weight as 256 pounds as of February 5, 2020. Regardless of whether his weight is 256 or 264 pounds, his BMI, according to the CDC BMI calculator is, at most, 32, putting him in the category of obese.[4] The CDC has cautioned that individuals who are severely obese, meaning a BMI of 40 or more, are at higher risk for severe illness from COVID-19.[5] Thus, Cooper's weight does not place him at higher risk.

Further, as with his hypertension and seizure disorder, Cooper has failed to show that the MDC cannot appropriately manage his medical conditions. To the contrary, his blood pressure

---

[3] Based on the Government's communications with defense counsel, the Government understands that Cooper believes that his diabetes has returned because he is again experiencing numbness in his legs and feet, frequent urination, sweating, and thirst.

[4] https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html.

[5] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

and seizure disorder are both responding to medical treatment, and, at least as of March 2020, it appears his prediabetes is under control without any need for medicine. In light of these circumstances, the Court should deny Cooper's motion for compassionate release based on his health issues and susceptibility to COVID-19. *See United States v. Zehner*, 19 Cr. 485, 2020 WL 1892188 (Apr. 15, 2020) (denying defendant's motion for compassionate release where defendant, who was serving a one year and one day sentence at MDC for his role in a conspiracy to steal and distribute oxycodone pills, was less than 65 (he was 38) and although he suffered from high blood pressure and depression, he did not have an underlying condition that put him at heightened risk for severe illness from COVID-19).

Finally, while acknowledging that each case is different and presents its own unique facts and circumstances, the Government submits that denying compassionate release in this case would be consistent with other rulings in this District and thus would not create a disparate result. In our opposition, the Government acknowledged that other district courts within the S.D.N.Y. and Second Circuit, have granted compassionate release motions under Section 3582(c)(1)(A), finding extraordinary and compelling reasons for release in light of the coronavirus pandemic. The circumstances in those cases, however, were different from those presented in Cooper's case. Indeed, in the majority of the cases where compassionate release was granted, two or more of the following circumstances were present: (1) documented, chronic conditions that placed the defendant at higher risk for severe illness from COVID-19 (often more than condition); (2) the defendant had served a substantial portion of his or her sentence; and (3) the Government consented.

A review of rulings issued since the Government filed its opposition on April 10, shows that these more recent rulings follow a similar pattern. That is, generally, where compassionate release was granted at least two or more of the enumerated circumstances were present. For example, in *United States v. Kataev*, 16 Cr. 763 (LGS), 2020 WL 1862685, the defendant, who was housed at FCI Otisville and scheduled to be released from custody in February 2021, suffered from chronic sinusitis and had a severely disabled child, whom his wife could not care for on her own. In light of the unique circumstances faced by the defendant and his family, the Government consented to the defendant's motion for compassionate release. In *United States v. Philip Smith*, 12 Cr. 133 (JFK), 2020 WL 1849748 (Apr. 13, 2020), the Court granted compassionate release where the defendant, age 62, suffered from multiple ailments, including asthma, high cholesterol, blood clots, and suspected multiple myeloma, had served 98 months of his 120-month sentence, and was scheduled to be released to a halfway house on April 23, 2020. *See also United States v. Sawicz*, 08 Cr. 287 (ARR), 2020 WL 1815811 (E.D.N.Y. Apr. 10, 2020) (granting defendant's motion to serve the remainder of his term on home confinement, where defendant, who was housed at FCI Danbury, suffered from hypertension, had served the majority of his five-year sentence, and was scheduled to be released to home confinement in August 2020); *United States v. Gross*, 15 cr. 769 (AJN), 2020 WL 1862251 (S.D.N.Y. Apr. 14, 2020) (finding that defendant failed to exhaust administrative remedies but previewing the court's view on the merits and stating that it intends to grant defendant's motion for release where defendant was a first time non-violent offender, who suffered from severe obesity, hypertension, and sleep apnea, had served roughly half of his 60-month sentence, and was eligible to be released to home confinement in May 2021).

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Government's opposition filed on April 10, 2020, Cooper's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) should be denied.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:_____
Kathryn Martin
Assistant United States Attorney
(914) 993-1963

cc: Clay Kamnisky, Esq., by e-mail
     Gregory Cooper, by mail

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK'
_____x

UNITED STATES OF AMERICA,

    -against-                                        01 Cr. 216 (CM)

MORDECHAI SAMET,

            Defendant.
_____x

Upon motion of

☒ the defendant

☐ the Director of the Bureau of Prisons for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors set forth in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission to the extent they are relevant to whether a deduction is warranted (and, if so, the amount of the reduction),

    IT IS ORDERED that the motion is:

☐ GRANTED

    ☐ The defendant's previously imposed sentence of imprisonment of _____
is reduced to _____; or

    ☐ Time served:

        ☐    The defendant is to remain in Bureau of Prisons custody until the defendant's residence can be verified *or* a release plan can be developed. Additional custody shall not exceed _____ days unless extended by the Court, or

Case 7:01-cc-00216-CM Document 498 Filed 04/09/20 Page 8 of 30

☐ An appropriate release plan is in place and the defendant shall be released immediately.

## SUPERVISED RELEASE

☐ The defendant's term of supervised release is unchanged.

☐ The defendant's term of supervised release is changed from \_\_\_\_\_ to _____.

☐ The defendant's conditions of supervised release are unchanged.

☐ The defendant's conditions of supervised release are modified as follows:

_____

_____

_____

_____

_____

_____

_____

☐ DEFERRED pending supplemental briefing and/or a hearing. The court DIRECTS the United States Attorney to file a response on or before _____, along with all Bureau of Prisons records [medical, institutional, administrative] supporting the approval or denial of this motion.

☐ DENIED after complete review of the motion on the merits.

☐ FACTORS CONSIDERED (Optional)

☒ DENIED WITHOUT PREJUDICE for failure to exhaust remedies (failure to fully exhaust all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf; the lapse of 30 days from the receipt of such a request by the Warden, whichever is earlier). *Samet undoubtedly exhausted his administrative remedies, but it appears that the Warden denied Samet's petition long before the COVID-19 pandemic began, which means that there was no live administrative petition at any point during the pandemic and so no opportunity for the Bureau of Prisons to consider the impact of COVID on Samet's situation. This differentiates Samet's case from that of Mark Resnick, see* **United States v. Resnick**, *2020 WL 1651508 (CM), where the petition was under administrative review during the COVID pandemic and the BoP was under orders from the Attorney General to consider COVID vulnerability in assessing compassionate release petitions. Samet should file a new administrative petition with the Warden, specifically citing his increased risk of complications from COVID-19 due to his age, which is above the CDC guideline for "older" persons who are particularly vulnerable to the disease.*

April 9, 2020

CHIEF UNITED STATES DISTRICT JUDGE