**Federal Defenders OF NEW YORK, INC.**

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

*David E. Patton*
*Executive Director*
*and Attorney-in-Chief*

Southern District of New York
*Jennifer L. Brown*
Attorney-in-Charge

April 23, 2020

**BY ECF**

Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quaroppas St.
White Plains, NY 10601

**MEMO ENDORSED**

Re: **United States v. Gregory Cooper,**
      **08 Cr. 356 (KMK)**

Dear Judge Karas:

I write in reply to the government's April 21, 2020 supplemental opposition to Mr. Cooper's motion for compassionate release ("Gov't Supp. Opp."). Mr. Cooper suffers from several chronic conditions that place him at high risk for severe illness from COVID-19, and he has already served a substantial majority of his sentence. This Court should order him released.

1. **The BOP has now denied Mr. Cooper's more recent request, mooting the parties' dispute about exhaustion.**

Today, Mr. Cooper received notice that the BOP has denied his more recent, pandemic-based request to bring a compassionate release motion on his behalf. *See* **Exhibit B** (Letter from Warden Edge). Although the denial letter is dated April 17, 2020, and is addressed to me, neither I nor counsel for the government had previously received it. AUSA Martin obtained it and provided it to me. The parties agree that the BOP's denial of Mr. Cooper's request moots the exhaustion issue and that the Court may decide this motion on the merits without further delay.

2. **Mr. Cooper is at grave risk from COVID-19.**

The government's arguments about each of Mr. Cooper's medical conditions miss the forest for the trees: Mr. Cooper has a combination of chronic conditions that in combination place him at very high risk for severe disease or death if he contracts COVID-19 at MDC.

Honorable Kenneth M. Karas  April 23, 2020
United States District Judge  Page 2

      The best answer to the government's arguments is the CDC's Morbidity and Mortality Weekly Report on the hospitalization rates and characteristics of patients hospitalized with COVID-19 in March.  Garg et al., *Hospitalization Rates and Characteristics of Patients Hospitalized with Laboratory-Confirmed Coronavirus Disease 2019 — COVID-NET, 14 States, March 1–30, 2020*, CDC, Morbidity and Mortality Weekly Report (Apr. 17, 2020) ("CDC Hospitalization Rates Report"), *available at* https://bit.ly/3axbNho.  It contains the following table:

TABLE. Underlying conditions and symptoms among adults aged ≥18 years with coronavirus disease 2019 (COVID-19)–associated hospitalizations — COVID-NET, 14 states,* March 1–30, 2020†

| Underlying condition | Age group (yrs), no./total no. (%) | | | |
|---|---|---|---|---|
| | Overall | 18–49 | 50–64 | ≥65 years |
| Any underlying condition | 159/178 (89.3) | 41/48 (85.4) | 51/59 (86.4) | 67/71 (94.4) |
| Hypertension | 79/159 (49.7) | 7/40 (17.5) | 27/57 (47.4) | 45/62 (72.6) |
| Obesity§ | 73/151 (48.3) | 23/39 (59.0) | 25/51 (49.0) | 25/61 (41.0) |
| Chronic metabolic disease¶ | 60/166 (36.1) | 10/46 (21.7) | 21/56 (37.5) | 29/64 (45.3) |
|    Diabetes mellitus | 47/166 (28.3) | 9/46 (19.6) | 18/56 (32.1) | 20/64 (31.3) |
| Chronic lung disease | 55/159 (34.6) | 16/44 (36.4) | 15/53 (28.3) | 24/62 (38.7) |
|    Asthma | 27/159 (17.0) | 12/44 (27.3) | 7/53 (13.2) | 8/62 (12.9) |
|    Chronic obstructive pulmonary disease | 17/159 (10.7) | 0/44 (0.0) | 3/53 (5.7) | 14/62 (22.6) |
| Cardiovascular disease** | 45/162 (27.8) | 2/43 (4.7) | 11/56 (19.6) | 32/63 (50.8) |
|    Coronary artery disease | 23/162 (14.2) | 0/43 (0.0) | 7/56 (12.5) | 16/63 (25.4) |
|    Congestive heart failure | 11/162 (6.8) | 2/43 (4.7) | 3/56 (5.4) | 6/63 (9.5) |
| Neurologic disease | 22/157 (14.0) | 4/42 (9.5) | 4/55 (7.3) | 14/60 (23.3) |
| Renal disease | 20/153 (13.1) | 3/41 (7.3) | 2/53 (3.8) | 15/59 (25.4) |
| Immunosuppressive condition | 15/156 (9.6) | 5/43 (11.6) | 4/54 (7.4) | 6/59 (10.2) |
| Gastrointestinal/Liver disease | 10/152 (6.6) | 4/42 (9.5) | 0/54 (0.0) | 6/56 (10.7) |
| Blood disorder | 9/156 (5.8) | 1/43 (2.3) | 1/55 (1.8) | 7/58 (12.1) |
| Rheumatologic/Autoimmune disease | 3/154 (1.9) | 1/42 (2.4) | 0/54 (0.0) | 2/58 (3.4) |
| Pregnancy†† | 3/33 (9.1) | 3/33 (9.1) | N/A | N/A |

Mr. Cooper has each of the top three comorbid conditions associated with COVID-19 hospitalizations:

**Hypertension.** Mr. Cooper has a long history of hypertension, for which he takes daily medication. Hypertension alone is a significant risk factor for severe COVID-19 disease, establishing extraordinary and compelling circumstances without more. *See, e.g., United States v. Sawicz*, 08 Cr. 287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020). It is irrelevant that "Cooper has failed to show that the MDC cannot appropriately manage" his hypertension, Gov't Supp. Opp. at 4, because he is not at risk from hypertension itself; rather the point is that hypertension puts him at increased risk of severe COVID-19 disease.

**Obesity.** Mr. Cooper stands 6'4, weighs about 264 pounds, and has a 47-inch waist. The government observes that Mr. Cooper's BMI of 32.1 is in the "obese" range but not the "severely obese" range. *Id.* While it is true, as the government notes, that the CDC has placed "severe obesity" on a non-exclusive list of medical conditions that put individuals at high risk, there is no basis for the government's assertion that Mr. "Cooper's weight does not place him at higher risk." *Id.* On the contrary, the CDC Hospitalization Rates Report defines obesity "as calculated body mass index (BMI) ≥30 kg/m$^2$," and notes that "[a]mong 73 patients with obesity, 51 (69.9%) had obesity defined as BMI 30–<40 kg/m$^2$, and 22 (30.1%) had severe obesity defined as BMI ≥40 kg/m$^2$." Another study found that obesity increases an individual patient's need not only of hospitalization but of intensive care and invasive mechanical ventilation. *See* Simonnet et al., *High prevalence of obesity in severe acute respiratory syndrome coronavirus-2 (SARS-CoV-2) requiring invasive mechanical ventilation*, Obesity (Apr. 9, 2020) ("IMV Study"), *available at* https://bit.ly/2KrVQ1v. That study defines "obesity" as a BMI over 30 and "severe obesity" as a BMI over 35. It found obesity present in 47.6% of cases requiring the use of a ventilator and severe obesity in 28.2%.

**Diabetes.** Mr. Cooper has a documented history of pre-diabetes and is now experiencing tingling and numbness in his lower extremities, frequent urination, sweating, and thirst. He recalls these symptoms from when he was previously diagnosed with diabetes (or "pre-diabetes;" he had not made the distinction). It makes sense that these symptoms have returned because he is constrained to a sedentary lifestyle at MDC—his medical duty classification forbids him even from engaging in sports—and his weight has gone up. Although the government points to a hemoglobin test within the upper bounds of the normal range, I understand that a hemoglobin test is more like a trailing average than a snapshot of Mr. Cooper's blood sugar and therefore does not fully capture Mr. Cooper's declining condition.

Honorable Kenneth M. Karas  April 23, 2020
United States District Judge  Page 4

Mr. Cooper also has several other characteristics that elevate his risk:

**Age.** Mr. Cooper is 52 years old. Although that does not place him in the *highest* risk age cohort, it places him at materially greater risk than younger individuals. The CDC published the following graphic in its Hospitalization Rates Report:



**Sex.** "Among 1,482 patients hospitalized with COVID-19, 74.5% were aged ≥50 years, and 54.4% were male." CDC Hospitalization Rates Report, *supra*. "[T]he need for [ventilator use] was significantly associated with male sex (p<0.05) and BMI (p<0.05), independent of age, diabetes, and hypertension." IMV Study, *supra*.

**History of smoking and drug abuse**. I noted in my April 16, 2020, that Mr. Cooper was a smoker for 30 years. The medical records that the government appended as Exhibit E to its supplemental opposition demonstrate that he also has a history of severe opioid, cannabis, and cocaine abuse disorders. According to the NIH, "[b]ecause it attacks the lungs, the coronavirus that causes COVID-19 could be an especially serious threat to those who smoke tobacco or marijuana or who vape. People with opioid use disorder (OUD) and methamphetamine use disorder may also be vulnerable due to those drugs' effects on respiratory and pulmonary health." *See* NIH, COVID-19: Potential Implications for Individuals with Substance Use Disorders (Apr. 6, 2020), https://bit.ly/3az3RMK.

**Seizures.** Although Mr. Cooper's seizures do not fit neatly into any publicized risk factor for COVID-19, they are part of the total mix of conditions contributing to his poor overall health and vulnerability.

Honorable Kenneth M. Karas  April 23, 2020
United States District Judge  Page 5

### 3. The BOP's numbers offer no comfort.

The government asserts that the BOP is "successfully mitigating" "the very real threat the coronavirus poses for prisons." Gov't Supp. Opp. at 3. That claim is hard to evaluate because the BOP is not conducting meaningful numbers of coronavirus tests.

The government writes that, as of April 16, only 5 MDC inmates out of 1,679 had tested positive for the virus.[1] But only 12 inmates out of 1,679 had been tested at all, and 16 staff members were also positive. On April 21, MDC reported that 6 inmates are now positive (but the number tested remained 12, suggesting a lag between testing and results), and now 23 staff members are positive. https://www.nyed.uscourts.gov/coronavirus. The government also notes that the BOP's national website, https://www.bop.gov/coronavirus/, is posting lower numbers for MDC. *See* Gov't Supp. Opp. at 3 n.1. At the time the government filed its supplemental opposition, the BOP's national website listed 3 positive inmates and 21 positive staff members. Today it lists 1 positive inmate and 23 positive staff. It is concerning, to say the least, that the staff totals are consistent between what is being disclosed locally pursuant to court order and what is reported on the BOP's website, while the inmate totals are very different—and, somehow, falling.

The disparity between the staff numbers and the inmate numbers is due to a testing disparity. The staff have access to testing outside the facility, while the inmates are tested only if they are so sick they must be taken to the hospital.

A useful point of comparison is GEO Queens, a private contract facility that houses only federal inmates and is also reporting its numbers pursuant to Chief Judge Mauskopf's standing order in the Eastern District. Until recently, GEO was not testing most symptomatic inmates. As of April 3, GEO reported testing only 4 inmates, 1 of whom was positive. But GEO subsequently decided to do more widespread testing of symptomatic inmates: on April 14, GEO reported testing 37 inmates, 25 of whom tested positive; on April 16, GEO reported testing 41 inmates, 36 of whom tested positive; and on April 21, it reported testing 41 inmates, 38 of whom tested positive.

Another point of comparison is an Ohio state prison that decided to test every inmate, including those who were *not* symptomatic: they found 1,828 inmates—73% of the total prison population—had the coronavirus. *See*

---

[1] I understand that one of the individuals who tested positive was a cadre on Mr. Cooper's unit.

Honorable Kenneth M. Karas  April 23, 2020
United States District Judge  Page 6

NPR, *73% Of Inmates At An Ohio Prison Test Positive for Coronavirus* (Apr. 20, 2020), https://n.pr/3bHXsQA. "109 staff members were also positive." *Id.*

Yet another point of comparison is the U.S.S. Theodore Roosevelt, an aircraft carrier on which the Navy tested the entire 4,800-member crew. With testing 94% complete, over 600 sailors had tested positive. "Roughly 60 percent of [those] who tested positive so far have not shown symptoms for COVID-19 . . . ." Phil Stewart & Idrees Ali, *Coronavirus clue? Most cases aboard U.S. aircraft carrier are symptom-free*, Reuters (Apr. 16, 2020), https://reut.rs/2VvHh3u.

In short, we have no idea how many people at MDC Brooklyn have the coronavirus, but, at least among the inmates, it is likely many more than has been reported so far. Notwithstanding whatever well intentioned efforts the BOP is making, conditions of confinement increase the risk of transmission and decrease the availability of testing and healthcare.

It does not take long for even low numbers of positive tests to turn into deaths in the correctional setting. On March 29, the BOP reported that five inmates were positive for COVID-19 at FCI Oakdale. The same date Oakdale reported the death of Patrick Jones the day before. Now there have been 7 deaths at that facility. At FCI Elkton, on April 2, there were only two inmates who had tested positive for COVID-19, according to the BOP. The same day, the first of 6 inmates at that facility died.

**4. Mr. Cooper has served a substantial majority of his sentence.**

Finally, the government points out that many of the cases in which compassionate release has been granted during this pandemic have involved defendants who have served a substantial portion of their sentence. *See* Gov't Supp. Op. at 5. That factor counsels in favor of granting Mr. Cooper's motion.

As the government has conceded, Mr. Cooper has served a substantial majority of his sentence—approximately 11 years—enough time for the purposes of just punishment, respect for the law, and the avoidance of unwarranted sentencing disparities. He poses no danger to the community and, on the contrary, has prepared for his reentry by taking many release preparation and self improvement courses within the BOP, including the non-residential drug treatment program and courses on personal growth and community resources. He has also positively engaged with the Aleph Institute and has a reentry coordinator there. *Cf. United States v. Millan*, 91 Cr. 685 (LAP), 2020 WL 1674058 (S.D.N.Y. April 6, 2020) (granting compassionate release to 57-year-old-man who has served 28 years of a life sentence based on his extraordinary rehabilitation).

Honorable Kenneth M. Karas  April 23, 2020
United States District Judge  Page 7

Mr. Cooper's 11 years in prison also distinguish this case from two cases cited by the government in its supplemental opposition. *See* Gov't Supp. Opp. at 4, 5. In *United States v. Livingston*, 18 Cr. 416 (ENV), 2020 WL 1905202 (E.D.N.Y. Apr. 17, 2020) compassionate release was denied to a 32-year-old man with pre-diabetes and no other risk factor. The defendant was in Criminal History Category IV and had been sentenced to 37 months' imprisonment just 3 months ago, in January 2020, for unlawful gun possession. In *United States v. Zehner*, 19 Cr. 485 (AT), 2020 WL 1892188 (S.D.N.Y. Apr. 15, 2020), the 38-year-old defendant whose only cognizable risk factor was hypertension had been sentenced to a year and a day in only two months ago, in February 2020, for his role in stealing and distributing oxycodone pills from pharmacies where he worked.

\* \* \* \* \*

Mr. Cooper has served enough time, and he should not be made to bear the medical risk of remaining incarcerated at MDC Brooklyn during this pandemic. The Court should grant his motion and reduce his sentence to time served.

Respectfully submitted,
/s/
Clay H. Kaminsky
Assistant Federal Defender
Federal Defenders of New York
(212) 417-8749

CC:  AUSA Kathryn Moore Martin

The Court grants the application for compassionate release. As noted in this letter, the application is now fully exhausted, based on BOP's denial of the application on April 17, 2020. As for the merits, it is undeniable that Cooper suffers from several medical ailments that individually and collectively place him in a high-risk category from COVID-19. As the data provided herein and in counsel's April 23, 2020 letter (citing a recent JAMA article) show, hypertension, obesity (as distinguished from morbid obesity) and diabetes are high risk comorbidity factors. The Government notes that Cooper is receiving treatment for his hypertension, but there is evidence that medical treatment for hypertension may add to the risk. See L. Fang, G. Karakiulakis, and M. Roth, "Are patients with hypertension and diabetes mellitus at increased risk for COVID-19 infection," Vol. 8, No. 4 The Lancet, Apr. 1, 2020 ("Hypertension is . . .treated with ACE inhibitors and ARBs, which results in an unregulation of ACE2. . . . Consequently, the increased expression of ACE2 would facilitate infection with COVID-19. We therefore hypothesize that diabetes and hypertension treatment with ACE2-stimulating drugs increases the risk of developing severe and fatal COVID-19."). The Government also notes that Cooper is properly categorized as obese, and not morbidly obese, but this still places Cooper in a higher risk category. And, while it is true that pre-diabetes may be distinguished from diabetes, it hardly places Cooper outside the danger zone. Moreover, as counsel for Cooper notes, it is the combination of these medical conditions, plus the fact that Cooper is now in his 50s that places him in a higher risk category. While the MDC has undertaken substantial steps to address the spread of COVID-19, it is undeniable that the risks of spreading the disease are inevitably higher in a prison setting, where social distancing is much more difficult. Moreover, while Mr. Cooper committed serious crimes, which is why the Court imposed the sentence it did, Mr. Cooper has served 11 years of that sentence and is due to be released as soon as July 2024, meaning that he has served nearly 3/4 of the time of actual imprisonment (assuming he would receive good time credit). The Court also has considered that Mr. Cooper has an alarmingly bad criminal history, but believes that the risk of re-imprisonment from committing crimes while on supervised release should be a sufficient deterrent. Thus, the Court grants the compassionate release request. Cooper's supervised release conditions will be modified to include 18 months of home confinement to be enforced at the discretion of the Probation Department. All other conditions that were imposed remain.

So Ordered.

4/28/20

# EXHIBIT B

Case 7:08-cr-00356-KMK   Document 189   Filed 04/28/20   Page 8 of 9



U.S. Department of Justice
Federal Bureau of Prisons

**Metropolitan Detention Center**
Office of the Warden
80 29th Street
Brooklyn, New York 11232

April 17, 2020

Clay H. Kaminsky
Assistant Federal Defender
Federal Defenders of New York
52 Duane St., 10th Floor
New York, NY 10007

Re:   Cooper, Gregory
      Reg. No. 45649-054

Dear Mr. Kaminsky:

This is in response to your letter dated April 2, 2020, in regards to Gregory Cooper, Reg. No. 45649-054, an inmate currently confined at the Metropolitan Detention Center, Brooklyn, New York. You request, on behalf of Mr. Cooper, that he be considered for a reduction in sentence or compassionate release pursuant to 18 U.S.C. §3582 and Bureau of Prisons Program Statement 5050.50, <u>Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§3582(c)(1)(A) and 4205(g)</u>, based on his current medical condition.

Federal Bureau of Prisons policy sets forth the medical and non-medical criteria the Federal Bureau of Prisons considers when determining an inmate's eligibility for a reduction in sentence. All RIS requests are assessed using the factors outlined in Section 7, which include the nature and circumstances of the inmate's offense, criminal history, institutional adjustment, inmate's age at the time of offense and sentencing, and whether release would minimize the severity of the offense.

Mr. Cooper is a designated inmate with a projected release date of July 14, 2024. Program Statement 5050.50, <u>Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§3582(c)(1)(A) and 4205(g)</u>, indicates your client does not meet any of the criteria established in this program statement. A review of his medical records does not identify any significant changes to his medical conditions to reflect a terminal or debilitated medical condition, as set forth in Program Statement 5050.50. You have not provided any additional evidence or information in support of the request. Accordingly, the request for a reduction in sentence is denied at this time.

I trust this has addressed your concerns.

Sincerely,

D. Edge
Warden

Cc:   Cooper, Gregory
      Reg. No. 45649-054